IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Dawn Page Finley-Bayne, ) | Civil Action No.: 6:13-cv-00290-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Carolyn W. Colvin, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the Court after the issuance of the Report and Recommendation ("R&R") of United States Magistrate Judge Kevin F. McDonald.[1] Plaintiff Dawn Page Finley-Bayne brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act"). In his R&R, the Magistrate Judge recommends affirming the decision of the Commissioner.

**FACTUAL FINDINGS AND PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits in April 2009, alleging that she became unable to work on August 28, 2008. The application was denied initially and on reconsideration. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ") on July 30, 2010. That hearing was held on July 21, 2011, and Plaintiff appeared and testified. A vocational expert also testified. The ALJ issued a decision dated September 12, 2011, finding that Plaintiff was not disabled. The ALJ's overall findings were as follows:

---

[1] In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to the Magistrate Judge.

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010, but not thereafter.

. . .

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 28, 2008 through her date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: asthma, chronic obstructive pulmonary disease, obesity and hypertension (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . .

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform simple routine unskilled light work as defined in 20 CFR 404.1567(b), with lifting and carrying 20 pounds occasionally and 10 pounds frequently; no prolonged standing and walking; requiring ability to alternate sitting and standing every 30 minutes; with no exposure to excessive dust, fumes, gases, odors, extremes of temperature or humidity; with no working at heights or around dangerous machinery; with no climbing, balancing or operating automotive equipment; with occasional stooping, kneeling, crouching and crawling. If someone can do light work, we determine that he or she can also do sedentary work.

. . .

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

. . .

7. The claimant was . . . 44 years old, which is defined as a younger individual age 18–49, on the date last insured (20 CFR § 404.1563).

>    8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
>    9.    Transferability of job skills is not material to the determination of disability because the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>    10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
>    11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from August 28, 2008, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

Tr. 14–22.

The ALJ's finding became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for further review. On January 31, 2013, Plaintiff filed this action seeking judicial review of the Commissioner's decision. Compl., ECF No. 1. Both Plaintiff and the Commissioner filed briefs, ECF Nos. 16, 21, 23, and the Magistrate Judge issued his Report and Recommendation ("R&R") on July 22, 2014, recommending that the Commissioner's decision be affirmed, R&R, ECF No. 32. Plaintiff filed timely objections to the R&R on August 4, 2014, Pl.'s Objs., ECF No. 33, and the Commissioner replied on August 21, 2014, Def.'s Reply, ECF No. 35.

## STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Act is a limited one. The Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than

3

preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citations omitted).

This statutorily mandated standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1973) (holding that the Court must uphold the decision supported by substantial evidence "even should [it] disagree"). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assume that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

Furthermore, a *de novo* review is conducted of the Magistrate Judge's R&R. 28 U.S.C. § 636(b)(1). The R&R is only a recommendation to the Court and has no presumptive weight; indeed, the responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. § 636(b)(1).

4

The right to *de novo* review, however, may be waived by the failure to file timely objections. *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate's proposed findings and recommendations." *Id.* Moreover, in the absence of objections to the R&R, the Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). In that event, however, the Court must " 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

### DETERMINATION OF DISABILITY

Under the Act, Plaintiff's eligibility for the benefits she is seeking hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Id.* § 423(d)(1)(A). "The ultimate burden to prove disability lies on the claimant." *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). A claimant may establish a *prima facie* case of disability based solely upon medical evidence by demonstrating that her impairments meet or medically equal the listed impairments set forth in Appendix 1 of Subpart P. 20 C.F.R. § 404.1520(d).

If such a showing is not possible, a claimant may also establish a *prima facie* case of disability by proving that she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664 (4th Cir. 1975). Because this approach is premised on the claimant's inability to resolve the question solely on medical

5

considerations, it then becomes necessary to consider the medical evidence in conjunction with certain "vocational factors." 20 C.F.R. § 404.1560(b). These factors include the claimant's (1) "residual functional capacity," *id.* § 404.1560; (2) age, *id.* § 404.1563; (3) education, *id.* § 404.1564; (4) work experience, *id.* § 404.1565; and (5) the existence of work "in significant numbers in the national economy" that the individual can perform, *id.* § 404.1560. If the assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it must be determined whether the claimant can do some other type of work, taking into account remaining vocational factors. *Id.* § 404.1560. The interrelation between these vocational factors is governed by Appendix 2 of Subpart P. Thus, according to the sequence of evaluation suggested by 20 C.F.R. § 404.1520, it must be determined: (1) whether the claimant is currently gainfully employed, (2) whether she suffers from some physical or mental impairment, (3) whether that impairment meets or medically equals the criteria of Appendix 1, (4) whether, if those criteria are not met, the impairment prevents her from returning to her previous work, and (5) whether the impairment prevents her from performing some other available work.

## ANALYSIS

The Magistrate Judge recommends affirming the decision of the Commissioner. Specifically, the Magistrate Judge concludes (1) that the ALJ did not commit reversible error in failing to list Plaintiff's diabetes as a severe impairment, (2) that the ALJ properly discounted Plaintiff's treating physicians' opinions that she was disabled, (3) that the ALJ did not err in assessing Plaintiff's credibility, and (4) that the ALJ adequately assessed the evidence of Plaintiff's obesity and the effect of her obesity on her ability to work. In her objections, Plaintiff argues that the Magistrate Judge erred in reporting (1) that the ALJ's failure to list Plaintiff's diabetes as a severe impairment was harmless error, (2) that the ALJ properly discounted the opinions of two of

Plaintiff's treating physicians, and (3) that the ALJ's assessment of Plaintiff's credibility was without error.

### I.     The Severity of Plaintiff's Diabetes at Step Two

The Magistrate Judge reports that "any error at step two of the analysis was harmless because the ALJ nevertheless proceeded to the next steps of the sequential evaluation process and considered the plaintiff's diabetes at subsequent steps." R&R 18.  Plaintiff, however, argues in her objections that, after step two, the ALJ never adequately considered her diabetes in combination with her other impairments. Pl.'s Objs. 2.  The Court finds that substantial evidence supports the ALJ's failure to list Plaintiff's diabetes as a severe impairment and that the ALJ properly considered the evidence of the impairment in assessing Plaintiff's residual functional capacity.

The Social Security regulations define a "non-severe" impairment as an impairment or combination of impairments that do not "significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  "Basic work activities" include "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, . . . handling; . . . seeing, hearing, . . . speaking; [u]nderstanding, carrying out, . . . remembering simple instructions; . . . [u]se of judgment; . . . [r]esponding appropriately to supervision, co-workers and usual work situations; and . . . dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).  "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984).

In his administrative decision, the ALJ did not list Plaintiff's diabetes among her severe impairments at step two of the sequential evaluation, implying the finding that Plaintiff's diabetes,

7

individually, was not a sufficiently severe impairment so as to affect her ability to work. The ALJ did, however, find several severe impairments and proceeded to the subsequent steps in the analysis. Although not reported by the Magistrate Judge, the Court notes that this implicit finding of the Magistrate Judge is supported by substantial evidence. In her initial brief, Plaintiff's argument only focuses on the ALJ's failure to discuss the diabetes diagnosis at step two. But as the Magistrate Judge notes in the R&R, if the ALJ's "failure" was erroneous at all, the failure was harmless in light of the ALJ's later discussion of Plaintiff's diabetes in determining how the impairment, either individually or in combination with her other impairments, affected Plaintiff's ability to work. Indeed, as part of the residual functional capacity assessment, the ALJ acknowledged Plaintiff's diabetes diagnosis and noted that he considered the combined effect of *all* of her impairments. Tr. 20. The ALJ's minimal discussion of Plaintiff's diabetes simply reflects the lack of evidence in the record that the impairment was sufficiently severe.

There is, moreover, no evidence to suggest that the ALJ improperly discounted the effects of Plaintiff's diabetes later in his analysis. In her objections, Plaintiff specifically points to four pages of Plaintiff's medical records—not cited by the ALJ—that indicated that treatments for Plaintiff's pulmonary impairments affected her blood sugar levels and, consequently, her diabetes. Tr. 38, 623, 629, 717. While these records cited show her diabetes was a factor in determining the proper treatment for her other impairments, they say nothing about the impairment's effect on Plaintiff's *ability to work*, the chief consideration of the ALJ in determining disability. Accordingly, the Court finds that the substantial evidence in the record supports the ALJ's analysis at step two, as well as the subsequent residual functional capacity finding. That is to say, the failure of the ALJ to address Plaintiff's diabetes at step two—whether erroneous or not—is harmless in light of the ALJ's recognition of the impairment at the subsequent steps of the sequential evaluation. *See, e.g.*,

8

*Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Plaintiff's objection, therefore, is without merit.

## II.     The Opinions of Plaintiff's Treating Physicians

The Magistrate Judge reports that the ALJ properly considered the opinions of two of Plaintiff's treating physicians, Dr. Robert A. Vande Stouwe and Dr. J. Daniel Love, when the ALJ discounted their opinions that Plaintiff was disabled. R&R 22. In her objections, Plaintiff contends that the opinions of a treating physician should be entitled to controlling weight unless the ALJ properly discounts them pursuant to 20 C.F.R. § 1527(c)(2). Pl.'s Objs. 2. She argues that the ALJ never performed the proper analysis, and that the Magistrate Judge erroneously substituted his own judgment on the facts. Pl.'s Objs. 3–4.

Generally, the medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). "Special significance," however," will not be given "to the source of an opinion on issues reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(3). One issue reserved to the Commissioner is opinions that a claimant is disabled or unable to work, as defined by the Act. 20 C.F.R. § 404.1527(d)(1). As the Social Security Administration has recognized, "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p. "[A]ll of the medical findings and other

9

evidence that support a medical source's statement that [a claimant is] disabled" must be reviewed nevertheless. 20 C.F.R. § 404.1527(d)(1); *see also* SSR 96-5p ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.").

The Court finds the Magistrate Judge's recommendation proper in light of the thorough discussion by the ALJ in finding that the several opinions of Drs. Vande Stouwe and Love regarding Plaintiff's *being disabled* are medical source opinions of the kind reserved for the Commissioner. In discounting the opinions, the ALJ expressly cited and considered the records that included the opinions of Drs. Vande Stouwe and Love and found that they were inconsistent with the opinions of other medical professionals and did not merit controlling weight. Contrary to Plaintiff's characterization of the ALJ's decision, there is no indication in the decision that the other opinions of Plaintiff's treating physicians, including Drs. Vande Stouwe and Love, were not given controlling weight. In fact, the ALJ noted that the opinions of treating physicians "on the issue of the nature and severity of an impairment" are given controlling weight. Tr. 20. For example, in her objections, Plaintiff specifically cites the opinion of Dr. Vande Stouwe that her asthma "worsened with little exertion." Tr. 346. This opinion, however, is not inconsistent with the ALJ's ultimate residual functional capacity finding that Plaintiff can only perform light (or sedentary) work with additional restrictions. Plaintiff's argument, in essence, assumes that the ALJ discounted *all* opinions of Drs. Vande Stouwe and Love on the basis that the ALJ expressly discounted *some*. Plaintiff, however, cannot point to any treating physician opinions, other than those reserved to the Commissioner, that contradict the residual functional capacity finding of the ALJ. Accordingly, Plaintiff's objections are without merit.

### III.     The Assessment of Plaintiff's Credibility

The Magistrate Judge reports that the ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and without legal error.  In her objections, Plaintiff contends that the Magistrate Judge failed to recognize that the ALJ cannot disregard Plaintiff's testimony "solely because it is not substantiated by objective medical evidence." Pl.'s Objs. 5.  Plaintiff, moreover, stresses that the ALJ only relied on Plaintiff's daily activities, which do not necessarily show she can maintain competitive employment, and ignored other facts, such as the effects of Plaintiff's steroid treatment on her other conditions. Pl.'s Objs. 6.

Under 20 C.F.R. §§ 404.1529(b), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996).  The threshold requirement is that there be "a showing by objective [medical] evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by [Plaintiff]." *Id.* (internal quotation marks omitted).  Once the ALJ concludes that this threshold requirement has been met, the ALJ must evaluate "the intensity and persistence of [Plaintiff's] pain, and the extent to which it affects her ability to work."[2] *Id.* at 595.  "[T]his evaluation must take into account not only [Plaintiff's] statements about her pain, but also 'all the available evidence,' including [Plaintiff's] medical history, medical signs, and laboratory findings; any objective medical evidence of pain . . . ; and any other evidence relevant to the

---

[2] Specifically, the following factors relevant to one's pain and symptoms will be considered by the Commissioner: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment that the individual uses or has used to relieve pain or other symptoms (such as lying flat on one's back, standing for 15 to 20 minutes each hour, etc.); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

severity of the impairment, such as evidence of [Plaintiff's] daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." *Id.* (citations omitted).  The ALJ may not disregard or discredit Plaintiff's statements about pain "solely because they are not substantiated by objective medical evidence." SSR 96-7p; *see also Craig*, 76 F.3d at 595.  The Fourth Circuit has held that once Plaintiff meets the "threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [Plaintiff is] entitled to rely exclusively on subjective evidence to prove the second part of the test, *i.e.*, that [the] pain is so continuous and/or severe that it prevents [Plaintiff] from working a full . . . day." *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006).

> However,
>
>> [t]his is not say . . . that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work.  They most certainly are.  Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Craig*, 76 F.3d at 595.  Finally, the ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

The Court finds no error in the Magistrate Judge's review of the ALJ's assessment of Plaintiff's credibility.  As the Commissioner notes in her reply to Plaintiff's objections, Plaintiff's objections are based, in part, on a misconstruction of the Fourth Circuit's ruling in *Craig*, which

12

was relied on by the Magistrate Judge in his R&R.  Plaintiff argues generally in her objections that several of the findings of the ALJ regarding the sufficiency of objective medical evidence are contradictory and that the ALJ discounted Plaintiff's subjective complaints solely on the lack of objective evidence.  This Court's review of the decision, however, shows that the ALJ was merely acknowledging that objective medical evidence supported the types of symptoms alleged by Plaintiff but that Plaintiff's allegations regarding the severity of the symptoms were not entirely credible.  The ALJ did not discount Plaintiff's credibility solely on the absence of objective medical evidence showing her symptoms prevented her from substantial gainful employment.  Instead, he also found Plaintiff's allegations inconsistent with other evidence in the record, such as her activities of daily living.[3]  The analysis was proper under *Craig*.

The ALJ also sufficiently addressed (although perhaps not expressly) the factors for assessing Plaintiff's credibility listed in 20 C.F.R. § 1529(c)(3). *See, e.g.*, *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001) (noting that "a formalistic factor-by-factor recitation of the evidence" is not necessary if the evidence is acknowledged in the decision). Plaintiff specifically argues that the ALJ failed to consider the side effects of Plaintiff's steroid therapy and how the therapy affected her other medical conditions.  In her objections, however, Plaintiff does not point the Court to side effects that the ALJ did not consider.  In his R&R, the Magistrate Judge notes Plaintiff's contention in her initial brief that Plaintiff's steroid therapy coupled with her diabetes led to frequent urination. R&R 27.  This side effect, however, was considered by the ALJ. Tr. 17 ("She stated that she has a problem with frequent urination, sometimes up to 12 times a day.").  Plaintiff also cites in her brief her "jitteriness, nervousness, [and] severe headaches." ECF No. 16, at 3.

---

[3] Plaintiff, of course, acknowledges that the ALJ considered (to a significant extent) Plaintiff's daily activities in assessing her credibility and finding that she was not disabled during the relevant period.  Indeed, the ALJ found that "[t]he total evidence of record did not substantiate the claimant's allegations concerning her impairments, symptoms and the ability to work." Tr. 19.

These side effects were acknowledged by the ALJ as well. Tr. 17. Therefore, the Court finds no reversible error in ALJ's assessment of Plaintiff's credibility, and Plaintiff's objections are overruled.

## CONCLUSION

The Court has thoroughly reviewed the entire record as a whole, including the briefs, the Magistrate Judge's R&R, Plaintiff's objections to the R&R, and applicable law. For the reasons set forth above and by the Magistrate Judge, the Court hereby overrules Plaintiff's objections and adopts and incorporates by reference the R&R of the Magistrate Judge. The Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge

September 29, 2014  
Florence, South Carolina